Grailing BROWN and Darryl Conquest

v.

Gary J. HILTON, Individually, etc. et al.

· Civ. A. No. 79–574.

United States District Court,
D. New Jersey.

June 10, 1980.

Grailing Brown and Darryl Conquest, pro se.

David W. Reger, Joseph T. Maloney, Deputy Attys. Gen., Trenton, N. J., for defendants.

## OPINION

DEBEVOISE, District Judge.

Plaintiffs Grailing Brown and Darryl Conquest, inmates at New Jersey State Prison at Trenton, brought this civil rights action under 42 U.S.C. § 1983 against various prison officials for alleged violations of their constitutional rights. Plaintiffs seek declaratory and injunctive relief as well as damages. The circumstances which gave rise to plaintiffs' action are as follows:

On December 28, 1978, prison guards conducted a routine search of inmate Charles Allen's cell at the New Jersey State Prison at Trenton [State Prison] and found six encyclopedias entitled "The Illustrated Science and Invention Encyclopedia" and papers dealing with ammunition and weapons. Lieutenant Jimmie L. Williams, the area supervisor, directed that these materials be confiscated as contraband.

Inmate Allen told Sergeant Nunn that the confiscated encyclopedias belonged to inmate Grailing Brown. As a result of this information, Sergeant Nunn and Officer W. Thompson conducted a search of inmate Brown's cell on December 29, 1978 and confiscated as contraband a book entitled "Infantry Weapons" by John Weeks.

On December 30, 1978, Officers Johnni Haynes and Anthony Persichetti conducted a search of inmate Darryl Conquest's cell because Conquest was a known accomplice of inmates Brown and Allen. The officers confiscated certain materials as contraband.

Plaintiffs Brown and Conquest were transferred to the Management Control Unit [MCU] to await disciplinary hearings. Before they were admitted to their cells in MCU, they were strip-searched[1] and subjected to a visual anal inspection.[2] Both received written notice of the disciplinary charges charged: Department of Corrections Rules 251.263 Nos. .209 and .306.[3]

On January 2, 1979, Officer Vito Casarella held disciplinary hearings for each of the plaintiffs. After reviewing the charges, Casarella continued both hearings for twenty-four hours in order to review the materials and to check with the mailroom.

On January 3, 1979, Casarella amended the charge to Rule 251.263 No. 803 to .306[4] for each plaintiff and allowed the plaintiffs to exercise their right to postpone the hearing for an additional twenty-four hours.

On January 4, 1979, Casarella heard arguments on the charges in separate hearings and found both inmates guilty of violating Rule 251.263 No. 803. He imposed fifteen days punitive lock-up, loss of 365 days good time, and administrative segregation not to exceed 365 days.

Plaintiffs' appeal to Gary Hilton, the institution's superintendent, was denied. Plaintiffs filed the instant action on February 13, 1979. On February 26, 1979, Superintendent Hilton amended the disciplinary actions taken against inmates Brown and Conquest and released them from administrative segregation, restored their commutation time, expunged the charges brought against them, and withdrew the referral to the MCU–Special Classification Committee. In April, 1979, a large portion of the materials confiscated from the plaintiffs' cells was returned.

1. A strip-search requires the inmate to take off his clothes and submit to a body search. Areas of the mouth, underarms, and between the legs are specifically checked.

2. A visual anal inspection requires the inmate to bend over and spread his buttocks to reveal his anus to the guard.

3. Rule 251.263 No. .209 provides that the possession of anything not authorized for retention or receipt by the inmate, and not issued to him through the regular institutional channels, is prohibited. Rule No. .306 prohibits conduct which disrupts or interferes with the security or orderly running of the institution.

4. Department of Corrections Rule 251.263 No. 803 to .306 prohibits attempting to make plans which disrupt or interfere with the security or running of the institution.

This matter comes before the Court on defendants' motion for summary judgment pursuant to Rule 56, *Federal Rules of Civil Procedure.*

When considering a motion for summary judgment, a court is required to resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought. *United States v. Diebold*, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Furthermore, even when the material facts are not in dispute, summary judgment may be inappropriate when contradictory inferences may be drawn from the facts. *De-Long Corporation v. Raymond International, Inc.*, 622 F.2d 1135 (3d Cir. 1980), *citing United States v. Perry*, 431 F.2d 1020 (9th Cir. 1970). Thus, the moving party must demonstrate that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *See, Lockhart v. Hoenstine*, 411 F.2d 455 (3d Cir.), *cert. denied*, 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969).

Supreme Court decisions have established general principles to inform our evaluation of the constitutionality of prison restrictions. The Court has held that prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison, but that these retained rights are necessarily limited by the fact of confinement as well as by the legitimate goals and policies of the penal institution. *See Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 129, 97 S.Ct. 2532, 2539, 53 L.Ed.2d 629 (1977); *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976); *Wolff v. McDonnell*, 418 U.S. 539, 555–56, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974); *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974); *Bell v. Wolfish*, 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979). The Court has recognized that maintaining institutional security and preserving internal order and discipline are legitimate and essential goals of the prison administration which may require limitation of the retained rights. *Pell v.*

*Procunier, supra*, 417 U.S., at 823, 94 S.Ct., at 2804; *Jones v. North Carolina Prisoners' Labor Union, supra*, 433 U.S., at 129, 97 S.Ct., at 2539; *Procunier v. Martinez*, 416 U.S. 396, 412, 94 S.Ct. 1800, 1810, 40 L.Ed.2d 224 (1974). The Court has also noted that prison administrators are to be accorded wide-ranging deference in their policies and practices which, in their judgment, are needed to preserve internal order. *Procunier v. Martinez, supra*, at 404, 405, 94 S.Ct., at 1807.

## I.

## SEARCH OF PLAINTIFFS' CELLS AND SEIZURE OF THEIR POSSESSIONS

The Supreme Court has never decided to what extent, if any, prisoners retain Fourth Amendment rights upon incarceration. *See Bell v. Wolfish, supra; Lanza v. New York*, 370 U.S. 139, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962); and *United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974). Other courts have considered the issue. In *Bonner v. Coughlin*, 517 F.2d 1311 (7th Cir. 1975), the Seventh Circuit found that prison authorities need not have a warrant or probable cause to search a cell. The Court was persuaded, however, "that the surrender of privacy is not total and that some residuum meriting the protection of the Fourth Amendment survives the transfer into custody". In *Hodges v. Klein*, 412 F.Supp. 896 (D.N.J.1976), Chief Judge Fisher agreed with the view taken in *Bonner* —prisoners are protected against *unreasonable* searches and seizures and do have a qualified right to privacy. In *Saunders v. Packel*, 436 F.Supp. 618, 626 (E.D.Pa.1977), the Court concluded that prisoners had a reasonable expectation that items of personal property which are possessed legitimately will not be wantonly destroyed or seized by prison guards absent some legitimate state interest in doing so.

For purposes of the present motion, I will assume that plaintiffs retain some Fourth Amendment rights upon commitment to a correction facility. *See Bell v. Wolfish, supra.*

■ There is no factual dispute with regard to defendants Persichetti, Haynes, Stillwell and Hilton's participation in the search of plaintiff Conquest's cell and the seizure of his possessions. Defendants Persichetti, Haynes and Stillwell confirm, in their affidavits, Conquest's allegations that they searched the cell and seized certain materials. Defendant Hilton also confirms, in his affidavit, plaintiff's allegation that the search was conducted pursuant to his orders. The only factual dispute concerns defendant Cheripko's participation. Plaintiff Conquest states, in his affidavit, that defendant Cheripko searched his cell and seized certain materials. Cheripko does not admit to such conduct in his affidavit. This factual dispute, however, is not material to the Fourth Amendment issue. Accepting plaintiff's allegations as true and resolving all inferences in favor of the plaintiff, I find as a matter of law that the search and seizure was reasonable and not violative of any Fourth Amendment rights retained by plaintiff Conquest. Defendant Hilton states, and Conquest does not deny, that the cell was searched because Conquest was a known accomplice of inmates Brown and Allen, who had contraband seized by prison officials several days earlier. Thus, it cannot be doubted that the search was an appropriate security measure. Moreover, plaintiff does not deny that his cell was left in proper order after the search.

■ As to the search of plaintiff Brown's cell and the seizure of certain possessions, material questions of fact exist precluding summary judgment for the defendants. By way of affidavit, plaintiff Brown states that immediately after the search his cell was "in shambles" and his T.V. was damaged. Plaintiff's statements to this effect support a claim that defendants' actions were unreasonable and violated any Fourth Amendment rights retained by plaintiff Brown.

■ Turning to the First Amendment questions, a prison inmate retains those First Amendment rights which are not inconsistent with his status as prisoner or with the legitimate penological objectives of the corrections system. Prison restrictions which inhibit First Amendment interests must be balanced against the state's legitimate interest in confining prisoners to deter crime, to protect society by quarantining criminal offenders for a period during which rehabilitation procedures can be applied, and to maintain the internal security of penal institutions. *Pell v. Procunier*, 417 U.S. 817, 820–21, 94 S.Ct. 2800, 2803, 41 L.Ed.2d 495 (1974).

Defendant seized as contraband forty-four items belonging to Conquest and returned within four months all but four items.[5] Defendants have supplied the Court with photocopies of the withheld items but were unable to provide photocopies of the returned items. Instead, defendants have submitted a list briefly identifying the returned items.[6]

The six items withheld included reports and detailed diagrams with instructions on the construction of bombs, long-range electro-wave detonators, and explosives.[7] Two

---

5. In his affidavit, plaintiff Conquest states that a book entitled "Che Guevara on Guerilla Warfare" was seized by the defendants, "along with other materials". Plaintiff does not dispute that the forty-three other items listed by the defendants were the "other materials seized".

6. The list describing the returned items is too long to recite here in full. It includes items which appear to be protected under the First Amendment, such as: "Four (4) hand written copies dealing with the 'Role in Triganometry [sic] Ratios' ". Other items appear not to be protected under the First Amendment, such as: "One (1) piece of cardboard hand written dealing with the charge of weapons from calibers

to the metric system"; and "One (1) typed two (2) page report on 'Sabotage and Demolition.' Attacking specialized targets (dump and Tank Storage)."

7. The six items withheld are described in defendants' list as follows:

Two (2) hand written copies and hand drawn diagrams pertaining to the construction of a bomb made from a walkie-talkie; Two (2) hand written and hand drawn copies on diagrams pertaining to the construction of a long range electro-sound wave detonator; One (1) page of white paper with hand written and hand drawn diagrams pertaining to the construction of a bomb from a stereo

items purport to instruct on the construction of a bomb from a stereo hi-fi and from a walkie-talkie.

■ I have examined the copies of the withheld items and the lists describing the materials returned and find that their seizure did not violate plaintiff Conquest's retained First Amendment rights in light of the circumstances of the search and seizure. Information on bombs, detonators and explosives presents self-evident dangers which threaten the internal security of the prison. Prison officials took measures which, in their judgment, were necessary to maintain institutional security and to preserve internal order and discipline. Even though defendants seized some items arguably protected under the First Amendment,[8] the prison officials returned these items, after examining them, within a reasonable amount of time. When weighed against the retained First Amendment rights of a prisoner, these institutional reasons are sufficiently weighty to prevail. Accordingly, summary judgment is granted in defendants' favor with respect to the seizure of plaintiff Conquest's possessions.

■ Plaintiff Brown submits, in his affidavit, that legal materials and a book entitled "Infantry Weapons" by John Weeks were seized by the defendants as contraband. Defendants admit that they seized the book but deny that they seized any legal materials. Since it is a question of fact whether legal materials were seized and never returned, summary judgment as to that issue is denied.

■ Defendants have supplied the Court with a copy of "Infantry Weapons", as well as a list of the handwritten notations marking various pages of the book. I have examined carefully the submitted materials and find that defendants' seizure of "Infantry Weapons" did not violate plaintiff Brown's retained First Amendment rights when balanced against the state's interests.

"Infantry Weapons" discusses common infantry weapons—the personal weapon or small arms. Its chapters are entitled Sighting Shots, Pistols, Submachine Guns, Rifles, Assault Rifles, Machine Guns, and Unusual Weapons for the Drawing Board. It includes detailed diagrams of the various weapons. The handwritten notations comment on the performance abilities of the weapons and the importance of the chapters in the book. For example, on page 17, next to the cutaway drawing of the .303 Lewis gun, a notation in red ink reads "It's OK"; and on pages 28 and 29, next to the drawing of the Luger PO8, a notation in red ink reads "very poor stopping power".

Because "Infantry Weapons" explains the use and procedures of deadly weapons, its presence in the prison environment threatens internal security and order. Its seizure by prison officials clearly served legitimate penological objectives: deterring crime, protecting society, and maintaining prison security. *See Pell v. Procunier, supra.* Given that prison officials are to be accorded wide-ranging deference in their decisions, *Bell v. Wolfish, supra,* summary judgment with respect to the seizure of "Infantry Weapons" is granted in defendants' favor.

## II.

### THE ANAL INSPECTIONS

Initially, it must be noted that the Court does not have the issue of the constitutionality of the strip searches before it. The plaintiffs do not raise it in their pleadings. Moreover, it appears unlikely that they could prevail on this issue on the facts of this case. *See Hodges v. Klein,* 412 F.Supp. 896, at 900 (DNJ 1976). Only the anal inspection aspect of the strip search is before the Court for consideration.

hi-fi; One (1) hand drawn map of the tri-state area folled [sic] by a four (4) page typed report on the 'Foco in the Abstract' (alleged street materials); One (1) typed two (2) page report on detonators, classification of detonators, applications; One (1) hand written yellow lined page containing materials about explosives. (Signed, Bingo)

**8.** *See* n. 6.

▆ Both plaintiffs Conquest and Brown were subjected to a visual anal inspection before they were confined in MCU.[9] Assuming for present purposes that plaintiffs retain some ·Fourth Amendment rights, I conclude that the searches at issue did not violate that Amendment. The Fourth Amendment prohibits only unreasonable searches. *Carroll v. United States,* 267 U.S. 132, 147, 45 S.Ct. 280, 283, 69 L.Ed. 543 (1925). Under the present circumstances, I do not find that these searches were unreasonable.

▆ The test of reasonableness under the Fourth Amendment requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. *Bell v. Wolfish, supra,* 441 U.S., at 559, 99 S.Ct., at 1884. It is recognized that the anal inspections conducted on plaintiffs Conquest and Brown necessarily entailed an invasion of their privacy. On the other hand, it cannot be questioned that the prison had a great need to conduct the anal searches before plaintiffs' transfers to MCU. "A Penitentiary is a unique institution fraught with sensitive security hazards, not the least of these being smuggling of contraband such as drugs, money, knives, etc. The state has a high security interest in eliminating smuggling into and out of penitentiaries." *Hodges v. Klein, supra,* at 900, citing *Gettleman v. Werner,* 377 F.Supp. 445, at 451–452 (W.D. Pa.1974). Prison officials had found that plaintiffs Conquest and Brown possessed materials which threatened the security and the order of the prison. Moreover, plaintiffs Conquest and Brown were known "troublemakers" who had recently been released from MCU to the general population. Prison officials had a strong interest in keeping dangerous items, such as the items seized from plaintiffs' cells, from the MCU, where inmates are permitted to retain few, if any, personal items. In view of the foregoing, the Court cannot say that the defendants abused their discretion. Balancing the interests, I find that the prison officials' need to conduct the search clearly outweighs the invasion to plaintiffs' Fourth Amendment rights.

This matter is distinguishable from *Hodges v. Klein, supra,* where Chief Judge Fisher held that the prisoners' retained Fourth Amendment protection prevents an anal examination "before an inmate enters the segregation areas, after he returns from the segregated exercise yard or after he returns from a telephone visit". *Id.,* at 902. The Court reasoned that although the state has some interest in requiring anal examinations before an inmate enters segregation or has unescorted contact with general population inmates, a metal detector protects the safety of prison guards by detecting any metal in the anal cavity without subjecting an inmate to "this degrading and humiliating search". *Id.* The Court concluded that in these circumstances the guards may conduct a visual anal search of an inmate only if "there is a reasonably clear indication or suggestion that the inmate is concealing something in his anal cavity". *Id.,* at 903. *Hodges* dealt with the routine for anal inspections then in existence at Trenton State Prison. In the instant matter, the Court is presented with circumstances where the prison officials acted under an emergency situation and in their best judgment in order to protect the security of the prison and to defuse a potentially dangerous situation. In such a case, the Court must accord prison officials wide-ranging deference in their actions.

Moreover, the Supreme Court recently rejected the idea that the use of a metal detector would be less intrusive and equally as effective as the visual inspection. In a footnote in *Bell v. Wolfish,* the Court stated:

[t]he logic of such elaborate less-restrictive-alternative arguments could raise insuperable barriers to the exercise of virtually all search-and-seizure powers. However, assuming that the existence of less intrusive alternatives is relevant to the determination of the reasonableness of the particular search method at issue, the alternative suggested by the District

---

9. The management control unit [MCU] is a segregated area.

Court simply would not be as effective as the visual inspection procedure. Money, drugs, and other nonmetallic contraband still could easily be smuggled into the institution.

441 U.S., at 559 n. 40, 99 S.Ct., at 1885.

For the foregoing reasons, summary judgment with respect to the anal inspections is granted in defendants' favor.

## III.

## THE DISCIPLINARY PROCEEDINGS

No material issues of fact exist concerning the disciplinary proceedings brought against the plaintiffs. In their complaint, plaintiffs charge that defendant Casarella, the hearing officer, violated their rights to due process and equal protection when he amended the disciplinary charges and imposed sanctions.

Defendant Casarella amended the charges brought against plaintiffs from 251.263 No. 306 (disruption or interference with security of the institution) to 251.263 Nos. 803 to 306 (attempt to disrupt or interfere with the security of the institution). He withdrew the charge of 251.263 No. 209 (possession of materials not issued through regular institutional channels). In his affidavit, defendant Casarella states that he amended the charges pursuant to Department Standard 251.272.

Standard 251.272 has never been officially adopted by the Department of Corrections. However, the Standard was circulated without being marked "Draft Copy" to the Department's disciplinary hearing officers. Defendant Casarella therefore acted in this matter pursuant to the Standard's apparent authority. Moreover, defendant Casarella acted in accordance with the practice of the Department.

■ I find as a matter of law that the amendment of the charge, coupled with the option of a 24-hour postponement for the inmate to prepare his defense, does not violate plaintiffs' due process or equal protection rights. *See Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

The amended charge, attempt to disrupt, is a lesser included offense to the charge of disruption. Thus, the elements of the amended charge are similar to the original charge. Moreover, the sanctions permissible under both charges are the same. For the foregoing reasons, summary judgment with respect to the amendment of the charge is granted in defendants' favor.

Finally, the sanctions imposed were within the guidelines established by the Department of Corrections (*see* Casarella Affidavit). Accordingly, summary judgment with respect to the sanctions imposed is granted in defendants' favor.

## IV.

## QUALIFIED IMMUNITY

■ Defendants submit that summary judgment should be granted in their favor on the basis of their qualified immunity from liability in a suit for damages under 42 U.S.C. § 1983, citing *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). The defendants' knowledge and intentions, however, are questions of fact. Accordingly, summary judgment on this issue is denied.

## V.

## CONCLUSIONS

With respect to plaintiff Conquest, I find that there are no material issues of fact and that as a matter of law the search of plaintiff's cell, the seizure of his possessions, the visual anal inspection, and the disciplinary proceedings did not violate plaintiff's constitutional rights. Accordingly, summary judgment is granted in defendants' favor as to plaintiff Conquest.

With respect to plaintiff Brown, I find that there are material issues of fact precluding summary judgment as to his allegations that legal materials were seized and never returned, and that defendants left his cell in "shambles" after the search. As to the remaining issues—the anal inspection and the disciplinary hearing—there are no

material issues of fact, and summary judgment is granted in defendants' favor.