865 F.2d 1269
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John PEROTTI, Plaintiff-Appellant,
v.
Terry MORRIS, Wally Stein, Stephen Dillon, Herbert Bares,
B.G. Seth, and Wayne Chambliss, Defendants-Appellees.
 No. 87-3827.
 United States Court of Appeals, Sixth Circuit.
 Jan. 13, 1989.
 
 Before MERRITT and RALPH B. GUY, Jr., Circuit Judges, and EDWARD H. JOHNSTONE, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff, John Perotti, is an inmate at the Southern Ohio Correctional Facility (SOCF). He filed a pro se, 42 U.S.C. Sec. 1983, action against various prison officials challenging the prison's strip search policy as applied to him and also claiming he was entitled to a due process hearing before the words "escape history" could be noted on his prison identification or transportation card.
 
 
 2
 The defendants responded by filing a Fed.R.Civ.P. 12(b)(6) motion to dismiss. The motion to dismiss was predicated upon the complaint failing to state a claim upon which relief could be granted, res judicata, and the vague and conclusory nature of the pleadings. The motion was referred to a magistrate who recommended dismissal. The district court adopted the magistrate's recommendation and ordered the complaint dismissed. Plaintiff now appeals from the judgment of dismissal. In connection with this appeal the court has received a pro se brief from the plaintiff as well as a supplemental brief and reply brief from appointed counsel.
 
 I.
 
 3
 This court held in Windsor v. The Tennesseean, 719 F.2d 155 (6th Cir.1983), cert. denied, 469 U.S. 826 (1984), that the standard of review "[w]hen evaluating a motion to dismiss brought pursuant to rule 12(b)(6), [is to regard] the factual allegations in the complaint ... as true." Id. at 158. This court has also said a complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 158, citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957). It is against this standard that we review Perotti's claims of error. Perotti argues on appeal that defendants have recast the issues he raised in the district court so that they do not fairly present his actual claims. Specifically, Perotti claims that he is not challenging the defendant's right to conduct inmate strip searches. Rather he is challenging their right to conduct strip searches under circumstances where the inmate has had no outside contact, where such searches include visual body cavity examinations, are sometimes conducted in front of others including female nurses, and are often accompanied by verbal abuse.
 
 
 4
 Similarly, Perotti argues that he is not challenging the prison's right in the abstract to transport prisoners using special security precautions but, rather, challenging their use of special restraining devices on him as a result of his erroneous "escape history classification." Relative to this issue, defendants respond that the "escape history" issue has been previously litigated and that their defense is res judicata.
 
 
 5
 It is also relevant to note that plaintiff claims his strip searches and the use of special security devices when he is being transported are really in retaliation for "his role as activist and jailhouse lawyer." (Appellant's Brief at 3).
 
 II.
 
 6
 Plaintiff's claim to being a frequent litigator is borne out by the records of this court. In 1986 we decided Perotti v. Marshall, No. 85-3776 (6th Cir. March 14, 1986), and issued an unpublished per curiam opinion. In Marshall, Perotti sought to have certain material expunged from his prison file record. Included in the material sought to be expunged was a reference to Perotti's participation in an escape plan. Perotti claimed this information was false. In resolving this issue against Perotti, we stated:
 
 
 7
 Appellant next contends that information concerning a plan to escape from custody is false. However, the record contains letters from an inmate with whom the escape plan was made which indicate that appellant was planning an attempt to escape. A review of this documentation reveals that there is sufficient justification for the prison officials to conclude that appellant may have been planning an escape. Appellant's belief that other facts outweigh such a conclusion is insufficient to justify relief within the guidelines of Paine, supra.
 
 
 8
 Perotti v. Marshall, No. 85-3776, slip op. at 3 (6th Cir. March 14, 1986) (per curiam).
 
 
 9
 Perotti would distinguish Marshall and attempt to avoid its res judicata effect on this issue by arguing that Marshall did not specifically reference information placed on his identification card. We find this to be a distinction without legal significance and affirm the district court's holding that this issue has been previously litigated and the bar of res judicata applies.
 
 III.
 
 10
 The issue of the strip searches is not so easy to resolve. The defendants filed no answer and only a very terse motion to dismiss with a sketchy supporting brief. The only argument offered by defendants to support their strip search practices was to cite Hudson v. Palmer, 468 U.S. 517 (1984); Bell v. Wolfish, 441 U.S. 520 (1979), and two district court and one circuit court opinion, none of which were from this circuit.[1] The defendants furnished no factual context nor offered any reasons why the searches complained of were justified. Neither the magistrate nor the district judge held any hearings or pursued the inquiry beyond the briefs filed.
 
 
 11
 Bell v. Wolfish provides our guidance on this issue and instructs that:
 
 
 12
 The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.
 
 
 13
 Bell, 441 U.S. at 559. This language clearly does not constitute blanket approval for all prison strip searches under all circumstances which appears to be the position argued by defendants. In Bell the Supreme Court went on to state:
 
 
 14
 We do not underestimate the degree to which these searches may invade the personal privacy of inmates. Nor do we doubt, as the District Court noted, that on occasion a security guard may conduct the search in an abusive fashion. 439 F.Supp., at 147. Such abuse cannot be condoned. The searches must be conducted in a reasonable manner.
 
 
 15
 Bell, 441 U.S. at 560.
 
 
 16
 "Reasonableness" in the context of searches is inherently a time, place, and circumstance type of factual inquiry.[2] Here the district court had before it none of the circumstances or alleged justification for the searches. Since it is clear from the decided cases that some strip searches will pass muster while others will not, we cannot conclude here the plaintiff failed to state a claim upon which relief could be granted. This is particularly true where a plaintiff, as was done here, spells out with some particularity the nature and circumstances of the searches being conducted and also alleges that the searches are accompanied by verbal abuse and are for retaliatory and not security purposes. Accordingly, we REMAND on this issue for further proceedings.[3] In all other particulars we AFFIRM the district court judgment.
 
 
 
 *
 Honorable Edward H. Johnstone, Chief Judge, United States District Court, Western District of Kentucky, sitting by designation
 
 
 [1]
 The two district court cases are clearly distinguishable. Brown v. Hilton, 492 F.Supp. 771 (D.N.J.1980), involved only one search which was conducted after contraband was found in the plaintiffs' cells and they were being transferred to a control unit to await disciplinary action. Bono v. Saxbe, 527 F.Supp. 1182 (S.D.Ill.1980), involved the upholding of strip searches after non-contact visits, but only after the court held a hearing, took testimony, and the district judge went to the prison and personally inspected the visitation cells and determined that it was possible to pass contraband even during a non-contact visit. Arruda v. Fair, 710 F.2d 886 (1st Cir.1983), cert. denied, 464 U.S. 999, affirmed a district court's allowance of prison strip searches, but pointed out that the decision in the district court was made after a hearing in which the court determined that the searches were reasonable under the circumstances. Even within this context one of the panel judges in Arruda dissented and concluded the strip searches were unreasonable
 Hudson v. Palmer, cited by defendants, has no application to this issue at all. It involves the destruction of personal property in a prisoner's cell and is not a strip search case.
 
 
 [2]
 Cf. Michenfelder v. Sumner, No. 86-1549 (9th Cir. Oct. 26, 1988). In Michenfelder the court upheld a strip search policy for maximum security prisoners on a record that completely developed the circumstances and necessity for the searches
 
 
 [3]
 We do not mean to suggest that a hearing is required merely because a prison inmate complains of an improper strip search. Here, however, the defendants put nothing before the court but a very brief and poorly supported motion to dismiss